UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

**ALVINA BACA**,

  Plaintiff,

vs.

                   No. CIV 1:97-91 JC/LCS

**KENNETH S. APFEL,**
**Commissioner of Social Security**[1],

  Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

### NOTICE

  Within ten days after a party receives a copy of these Proposed Findings and Recommended Disposition that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such Proposed Findings and Recommended Disposition. A party must file any objections within the time period allowed if that party desires review by the district court. In the absence of timely-filed objections, no review will be entertained.

### PROPOSED FINDINGS

  Plaintiff Alvina Baca ("Baca") invokes this Court's jurisdiction under 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Health and Human Services ("Commissioner"). The Commissioner determined that Baca is not eligible for either disability insurance benefits or for Supplemental Security Income (SSI) benefits. Baca now moves this

---

  [1]Kenneth S. Apfel was sworn in as Commissioner of Social Security on September 29, 1997. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Kenneth S. Apfel should be substituted for Acting Commissioner John J. Callahan as the defendant in this suit.

Court for an order to reverse the administrative decision or, alternatively, to remand this matter for a rehearing. (Mot. to Reverse or Remand at 2; Pl.'s Reply Br. at 6). This Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner applied the correct legal standards. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

### A. Statement of the Facts

Baca alleges disability due to a back condition. (Tr. at 11). At the time of the hearing before the Administrative Law Judge (ALJ), Baca was forty-seven years old. *Id*. She has a seventh grade education. *Id*. Baca's past relevant work was as a waitress, a housekeeper and as a sewing machine operator. *Id*. She has not engaged in substantial gainful activity since August 30, 1992. (Tr. at 13).

After holding an administrative hearing, the ALJ found that Baca was not disabled at step four of the sequential evaluation process. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five-step evaluation process for determining disability). Specifically, the ALJ determined that Baca had a residual functional capacity (RFC) for performing light work, which did not preclude her from returning to her past relevant work as either a housekeeper or a sewing machine operator. (Tr. at 13). This became the final decision of the Appeals Council on November 22, 1996. (Tr. at 3-4).

### B. The Standard of Review

The function of this Court on review is not to try the plaintiff's claim *de novo*, but to determine upon the whole record whether the Commissioner's decision is supported by substantial evidence. *Hamilton v. Secretary of Health & Human Services*, 961 F.2d 1495, 1497-98 (10th

Cir. 1992). Substantial evidence is more than a scintilla but less than a preponderance of the evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is such relevant evidence as reasonable minds might accept as adequate to support a conclusion. *Teter v. Heckler*, 775 F.2d 1104, 1105 (10th Cir. 1985).

It is well settled that if there is substantial evidence to support the Commissioner's decision and if the Commissioner applied correct legal standards, then that decision must be upheld. *Andrade v. Secretary of Health and Human Services*, 985 F.2d 1045, 1047 (10th Cir. 1993). This Court will not reweigh the evidence generally, *Hamilton*, 961 F.2d at 1498, nor second-guess the ALJ's credibility determinations, *Williams v. Bowen*, 844 F.2d 748, 755 (10th Cir. 1988). "However, the district court should not blindly affirm the [Commissioner's] decision but must instead scrutinize the entire record to determine if the plaintiff's claim has been fairly evaluated and the law has been correctly applied." *Hogan v. Schweiker*, 532 F.Supp. 639, 642 (D.Colo. 1982).

  **C.**  **The Motion to Reverse or Remand**

In her memorandum brief, Baca makes three arguments to support her motion to reverse or remand. First, she alleges that the ALJ erred by failing to find that Baca had a severe medically determinable injury which disabled her for a consecutive twelve month period. (Mem. Supp. Mot. to Reverse or Remand at 11-12). Second, Baca contends that the ALJ failed to follow the treating physician rule and thereby the ALJ's step four determination is not supported by substantial evidence . (Mem. Supp. Mot. to Reverse or Remand at 12-13). Finally, Baca submits that the ALJ failed to consider all relevant medical evidence of possible impairments and that the ALJ erred in not finding that Baca's impairments met a listing in the Listing of Impairments.

(Mem. Supp. Mot. to Reverse or Remand at 13-15).

### a.      Consecutive Twelve Month Disability Period

In her first argument, Baca alleges that the ALJ erred by failing to find that Baca had a severe medically determinable injury which disabled her for a consecutive twelve month period. (Mem. Supp. Mot. to Reverse or Remand at 11-12). Essentially, Baca contends that because the time period between Baca's onset date of August 30, 1992 and her date of maximum medical improvement of September 20, 1993 lasted over twelve months, she should have been considered disabled as a matter of law.

Under the provisions of 42 U.S.C. § 416(I)(1)(A), disability is defined as the

> inability to engage in any substantial gainful activity by reason of any medical determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months.

The record contains records from Dr. Paul Turner, in which he notes that Baca reached maximum medical improvement on November 15, 1993. (Tr. at 91). The ALJ listed the date of maximum medical improvement as September 20, 1993. (Tr. at 11). The record clearly shows that Baca's onset date was August 30, 1992. (Tr. at 13, 91, 102). Therefore, whether using the ALJ's date or that provided by Dr. Turner, the time period between these two dates lasted over twelve months.

I agree with Defendant that the date or dates of maximum medical improvement are not controlling in view of the more important question of whether Baca could engage in substantial gainful activity during the relevant time period. More precisely, the date when Baca reached maximum medical improvement does not preclude the possibility that Baca was capable of

performing light work prior to that date.  In fact, there is evidence in the record which does not rule out that Baca could perform light work during the time period in question.  For example, in his report of September 8, 1993, Dr. Turner recommends that Baca not lift anything over thirty pounds, which does not preclude the performing of light work (no lifting of more than twenty pounds).  (Tr. at 92).  In another report, dated November 4, 1993, Dr. Turner states that Baca could return to her work and perform light work.  (Tr. at 91).

Based upon this reasoning, as well as the medical evidence contained in the record, I find no merit to Baca's argument pertaining to the twelve month period.  In my view, the fact that the date indicating maximum medical improvement is over twelve months after the onset date does not result in a per se determination that Baca is disabled under 42 U.S.C. § 416(I)(1)(A).  The relevant inquiry is whether Baca's impairments precluded her from performing work as defined under the Social Security Act.  Accordingly, I recommend that this basis for reversal or for remand be denied.

      b.    **Treating Physician Rule**

In her second argument, Baca contends that the ALJ failed to comply with the treating physician rule and therefore the ALJ's step four determination is not supported by substantial evidence.  (Mem. Supp. Mot. to Reverse or Remand at 12-13).  It is well settled in this circuit that "[a] treating physician's opinion must be given substantial weight unless good cause is shown to disregard it."  *Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 289-90 (10th Cir. 1995).

Here, Baca takes issue with the ALJ's alleged disregard of Dr. Turner's medical opinions.  (Mem. Supp. Mot. To Reverse or Remand at 13).  Specifically, Baca submits that the ALJ's step

four finding of nondisability is contrary to Dr. Turner's opinion and that the ALJ failed to give more weight to Dr. Turner's report. *Id.*

I find no merit to this argument. Dr. Turner's reports are consistent in stating that Baca was capable of returning to work provided that she be limited to light work. (Tr. at 91-92). Baca's return to her past relevant work as a housekeeper and as a sewing machine operator are consistent with Dr. Turner's light work finding. Therefore, I recommend that Baca's second argument regarding the treating physician rule be disregarded as a basis for reversal or remand.

      **c.**      **Failure to Consider Relevant Medical Evidence of an Impairment**

Finally, Baca alleges that the ALJ erred by misstating Baca's medical impairments and by failing to consider all relevant medical evidence. (Mem. Supp. Mot. to Reverse or Remand at 13-15). Specifically, Baca takes issue with the ALJ's finding that the only impairments were "a lumbar herniated disc and spinal stenosis" and that Baca's medical records "do not substantiate any radiculopathy, neurological problem, or nerve root impingement expected to cause lower extremity complaints." (Tr. at 12, 14). Baca also contends that her impairments meet the requirements set forth in Listing 1.05C from the Listing of Impairments.

According to Baca, the doctors' reports support a finding of other impairments. This includes Dr. Brian Delahoussaye's findings of January 21, 1993, in which he found "evidence of lumbar radicular nerve root entrapment secondary to industrial injury." (Tr. at 105). In that same report, Dr. Delahoussaye also notes there is nerve root irritation. (Tr. at 107). He qualifies that statement, however, by also stating that "the degree of nerve root irritation . . . was rather sparse and I do not believe that surgery at this time is an absolute necessity." *Id*.

Baca also points to the findings of Dr. Richard Weber, who diagnosed Baca as suffering

from degenerative disc disease at the lumbar spine. (Tr. at 145). Based upon Baca's view that she suffers from (a) degenerative disc disease of the lumbar spine, (b) degenerative joint disease of the lumbar spine, (c) facet joint disease, (d) sacroiliac dysfunction and (e) nerve root entrapment, she argues that her condition meets the requirements of Listing 1.05C, which states:

> Other vertebrogenic disorders (e.g., herniated nucleus puplosus, spinal stenosis) with the following persisting for at least 3 months despite prescribed therapy and expected to last 12 months.  With both . . .
> 1. Pain, muscle spasm, and significant limitation of motion in the spine; and
> 2. Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss.

20 C.F.R. Pt. 404, Supt. P, App. 1, § 1.05C.

In order to meet a listing, a claimant must meet all of the criteria specified in the Listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id*. After reviewing all of the medical evidence in the record, I find that Baca has failed to meet the requirements in Listing 1.05C. For example, she has not presented any evidence which would indicate that she has "significant limitation of motion in the spine" and "significant motor loss with muscle weakness and sensory and reflex loss," both of which are required to meet Listing 1.05C. In his most recent notes, the treating physician, Dr. Weber, writes, "I don't see evidence of marked muscular weakness or signs of radiculopathy in either the right or left lower extremity." (Tr. at 160). He also concluded that the recent MRI study did not appear to show evidence of marked herniation of a disc or of pressure on the nerve roots. (Tr. at 160-61). While Dr. Weber found evidence of spinal stenosis in the area of L4-5 or L5-6, he concluded that the condition was only mild to moderate. (Tr. at 161). After reviewing the most recent records from Dr. Weber, as well as the other medical

evidence in the record, I find that the ALJ's determination that Baca did not meet a Listing is supported by substantial evidence.

This leaves only Baca's assertion that the ALJ failed to consider all relevant medical evidence.  On this score, Baca specifically disagrees with the ALJ's finding that Baca's "medical records do not substantiate any radiculopathy, neurological problem, or nerve root impingement . . . ."  (Tr. at 12).

A review of the various records shows that there were contrary medical findings in regards to radiculopathy, neurological problems and nerve root impingement.  For example, Dr. Turner, Baca's initial treating physician, states in one report that Baca has "not developed any neurological deterioration."  (Tr. at 93).  However, in another report he notes that Baca's pain may be the result of "nerve root entrapment."  (Tr. at 94).  His medical notes of December 9, 1992, are even more enigmatic.  There, he states that the MRI scanning did not support "findings to suggest nerve root entrapment," but he also notes in that same report that the x-rays "support the diagnosis of nerve root entrapment."  (Tr. at 100).

Dr. Delahoussaye concluded that Baca's condition included nerve root entrapment or spinal stenosis.  (Tr. at 106).  However, he also believed that Baca could return to light work duties.  *Id*.

In the most recent medical evaluation of Baca contained in the record, Dr. Weber concluded that Baca did not have nerve root entrapment.  (Tr. at 160-61).  He also opined that there was no "evidence of marked muscular weakness or signs of radiculopathy in either the right or left lower extremity."  (Tr. at 160).  He primarily found evidence of spinal stenosis, which he rated as "only mild to moderate."  (Tr. at 161).  Finally, he concluded that Baca's complaints

were not substantiated by the examination. *Id*. In the end, Dr. Weber states that Baca has "a 10% impairment of the whole person." *Id*.

Based on my review of all of the medical records, and cognizant of the proper standard of review, I find that the ALJ's determination that Baca's medical records did not substantiate a diagnosis of radiculopathy, neurological problems or nerve root impingement is supported by substantial evidence. In this regard, I note that the ALJ relied primarily on Dr. Weber's most recent findings, which is reasonable given that Dr. Weber was the final treating physician and that those recent findings were in large part based upon an MRI conducted on Baca subsequent to the hearing before the ALJ. In his role as the factfinder, the ALJ exercised his duty to resolve the medical conflicts in the record. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991). In my view, his resolution of those conflicts is supported by substantial evidence. For all of these reasons, I find no merit to Baca's contention that the ALJ failed to consider all relevant medical evidence.

## MAGISTRATE JUDGE'S RECOMMENDED DISPOSITION

For the aforementioned reasons, and mindful of the proper standard of review, I find that the Commissioner's final decision is supported by substantial evidence. Consequently, I recommend that Plaintiff's motion to reverse or remand be denied and that this cause be dismissed with prejudice.

_____
Leslie C. Smith
United States Magistrate Judge